## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

MELISSA MCGUIRE,

       *Plaintiff*,

v.

       Case No. 2:24-cv-02047-EFM-GEB

TODD W. ALLEN, et al.,

       *Defendants*.

## MEMORANDUM AND ORDER

Before the Court is a Motion to Dismiss (Doc. 9) by Defendant Dick Heitschmidt and Defendant City of Hutchinson, Kansas (collectively "Movants"). Defendant Todd Allen does not join in the Motion. In their Motion, Movants seek dismissal of Plaintiff Melissa McGuire's Fourth Amendment and negligence claims against them, all of which stem from Allen's sexual assault of Plaintiff in 2013. Although Plaintiff's claims are timely under the applicable statute of limitations and the discovery rule, they nevertheless fail to state a claim upon which relief may be granted. Therefore, the Court grants Movants' Motion to Dismiss. Because the Court dismisses Movants from the case, the Court denies as moot Movants' pending Motion to Stay Discovery (Doc. 18).

## I.      Factual and Procedural Background[1]

On the evening of July 5, 2013, Allen sexually assaulted Plaintiff. As Plaintiff and a friend were kissing in her car, Allen approached and knocked on the window. Identifying himself as a

---

[1] The facts in this section are taken from Plaintiff's Complaint unless otherwise cited and are considered true for the purposes of this Order.

police officer while shining a light into her fact, Allen ordered Plaintiff out of her car to be searched for drugs before molesting her.  Ironically, Allen was a police officer for the Hutchinson Police Department ("HPD") at that time.  However, Plaintiff was unaware of her assailant's identity and after realizing his evil intent, she did not suspect that he was in fact a police officer.  When Plaintiff reported the sexual assault to the HPD, it did nothing to follow up on her allegations.  At that time, Heitschmidt was chief of police at the HPD and thus Allen's supervisor.

Unfortunately, Plaintiff was neither Allen's first nor last victim.  Between October 2012 and July 2018, the HPD had received at least eight other reports describing sexual assaults under circumstances resembling Plaintiff's experience.  One of those assaults occurred before Allen assaulted Plaintiff in 2013.[2]  Plaintiff does not allege that the victim of the prior assault knew Allen was a police officer.

In 2018, a new police chief publicly announced that a serial rapist had been targeting women while identifying as a police officer.  In 2022, Allen at last was arrested for his crimes and charged with 24 counts of criminal misconduct including aggravated sexual battery, rape, attempted rape, aggravated indecent liberties with a child, kidnapping, sexual battery, and breach of privacy.  He is now serving time in prison, having pleaded guilty to many of the crimes charged.

In late 2022 or early 2023, Plaintiff finally learned the identity of her assailant.  She initiated this lawsuit against Allen, Heitschmidt, and the City on February 6, 2024.  In her Complaint, Plaintiff brings two 28 U.S.C. § 1983 claims against the City for violations of the Fourth Amendment (Counts II and III) under multiple theories.  She also asserts one claim against

---

[2] In her Complaint, Plaintiff uses the language, "At least one . . . ."  Plaintiff's phrasing creates ambiguity as to the number of assaults that occurred prior to July 2013.  Nevertheless, to read more than one assault into that time period would require the Court to pass beyond any reasonable inference into the realm of speculation.  Therefore, the Court will take Plaintiff's facts as pleaded and conclude that only one other assault occurred before July 2013.

the City for negligent failure to train and supervise (Count VIII).  Against Heitschmidt, Plaintiff asserts only one claim for negligence, with several bases: failure to train, supervise, investigate, and warn (Count VII).  Plaintiff also asserts several claims against Allen in his individual capacity. While Movants are represented by counsel, Allen proceeds pro se for the time being.[3]

On April 15, 2024, Movants submitted the present Motion to Dismiss, arguing that Plaintiff's claims against them should be dismissed under Federal Rule of Civil Procedure 12(b)(6).  While the present Motion to Dismiss was pending, Movants also submitted their Motion to Stay Discovery until the Court rules on their Motion to Dismiss.  These matters have been fully briefed and are now ripe for the Court's ruling.

## II.      Legal Standard

Under Rule 12(b)(6), a defendant may move for dismissal of any claim for which the plaintiff has failed to state a claim upon which relief can be granted.[4]  Upon such motion, the court must decide "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'"[5]  A claim is facially plausible if the plaintiff pleads facts sufficient for the court to reasonably infer that the defendant is liable for the alleged misconduct.[6]  The plausibility standard reflects the requirement in Rule 8 that pleadings provide defendants with fair notice of the nature of claims as well the grounds on which each claim rests.[7]  Under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint, but need not afford such a presumption to

---

[3] Aside from a letter informing the Court that he is currently incarcerated, Allen has yet to file anything in this case.

[4] Fed. R. Civ. P. 12(b)(6).

[5] *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[6] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

[7] *See Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008) (citations omitted); *see also* Fed. R. Civ. P. 8(a)(2).

legal conclusions.[8]  Viewing the complaint in this manner, the court must decide whether the plaintiff's allegations give rise to more than speculative possibilities.[9]  If the allegations in the complaint are "so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'"[10]

### III.    Analysis

### A.    Statute of limitations

Movants primarily argue that Plaintiff's claims are barred by the applicable statute of limitations.  For Plaintiff's Fourth Amendment claims asserted under § 1983, the applicable statute of limitations is two years according to K.S.A. § 60-513(a)(4).[11]  The same statute also applies to Plaintiff's state law tort claims.[12]  Movants argue, therefore, that Plaintiff's time to bring any suit against them expired in 2015.

Plaintiff contends that her claims did not accrue until Fall 2022 when she discovered the identity of her assailant, and thus discovered the injury to her constitutional rights that Movants allegedly caused.  In making this argument, Plaintiff relies on the standard for the "discovery rule" under federal law.[13]  That is, "[a] civil rights action accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action."[14]  In an action for violation of a

---

[8] *Iqbal*, 556 U.S. at 678–79.

[9] *See id.* ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." (citation omitted)).

[10] *Robbins*, 519 F.3d at 1247 (quoting *Twombly*, 550 U.S. at 570).

[11] *Eden v. Webb*, 2022 WL 17576354, at *1 (10th Cir. Dec. 12, 2022); *see also Wallace v. Kato*, 549 U.S. 384, 387 (2007) (holding for claims under § 1983 that courts must look to the state statute of limitation for personal-injury torts).

[12] *Lopez v. Davila*, 63 Kan. App. 2d 147, 526 P.3d 674, 676 (2023).

[13] *See Wallace*, 549 U.S. at 388 ("[T]he accrual date of a § 1983 cause of action is a question of federal law that is not resolved by reference to state law.").

[14] *Herrera v. City of Espanola*, 32 F.4th 980, 990 (10th Cir. 2022) (further citation and quotations omitted).

constitutional right, "such claims accrue when the plaintiff knows or should know that his or her constitutional rights have been violated."[15]

Here, Plaintiff was unaware that the City employed Allen until Fall 2022. Similarly, she was unaware that Heitschmidt—as the Chief of Police at that time—was Allen's supervisor. Thus, she could not have known that the assault implicated her constitutional rights because she was unaware that Allen was a government employee.[16] Indeed, she would have been entirely unaware of Movants' involvement or that they injured her constitutional rights. Therefore, Plaintiff's causes of action against Movants did not accrue until Fall 2022. Because she first asserted her claims in February 2024, Plaintiff's claims are timely under the two-year statute of limitations.

Movants rely on this Court's recent order in *Espinosa v. Allen*[17]—a case brought by one of Allen's victims against the same defendants as here—to argue that Plaintiff's inability to identify her assailant cannot prevent her claims from accruing. *Espinosa*, however, does not aid Movants. The plaintiff in *Espinosa* allegedly knew that her assailant was an HPD officer, even though she could not identify him as Allen.[18] Therefore, the plaintiff knew of Movants' involvement and the "general cause" of her injury—thus, she knew that her constitutional rights might have been injured.[19] Here, Plaintiff could not have known in 2015 that her constitutional rights were violated by any of Defendants' actions because she did not know any state actors were involved.[20]

---

[15] *Id.* at 992 (further citations and quotations omitted).

[16] *See Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1447 (10th Cir. 1995) (holding that only state actors can violate constitutional rights and be sued under § 1983).

[17] 2024 WL 3494399 (D. Kan. July 22, 2024).

[18] *Id.* at *6.

[19] *Id.*

[20] *See Gallagher*, 49 F.3d at 1447 (holding that recovery under § 1983 is limited to state actors).

Plaintiff's state law negligence claims are also timely.  Under Kansas law, "the statute of limitations starts to run in a tort action at the time a negligent act causes injury if both the act and the resulting injury are reasonably ascertainable by the injured person."[21]   Here, Plaintiff's ignorance of Allen's identity or employment by the City meant that she had no knowledge of Movants' allegedly negligent acts in failing to investigate, train, or supervise Allen or investigate prior reports.  She only discovered that injury in Fall 2022.  Accordingly, Plaintiff's state law claims against Movants are also timely under K.S.A. § 60-513(a)(4).

**B.      Merits of Plaintiff's § 1983 claims**

Having determined that Plaintiff's claims are timely, the Court must now address whether they are plausible.  Counts II and III appear to be entirely duplicative of each other, as they allege violations of the Fourth Amendment by the City.[22]   The crux of Plaintiff's Fourth Amendment claims revolves around the City's failure to prevent Allen from sexually assaulting Plaintiff and the City's refusal to investigate Plaintiff's reported assault.  Within both Counts II and III, Plaintiff asserts various theories as to how the City is liable: failure to train, failure to supervise, failure to discipline, and failure to investigate.

Through her Fourth Amendment claims, Plaintiff seeks to hold the City liable as a municipal defendant.  In *Monell v. Department of Social Services*,[23] the United States Supreme Court found that "Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort."[24]   To state a claim for municipal liability under § 1983, a plaintiff must allege "(1) an official policy or custom, (2)

---

[21] *Lopez*, 526 P.3d at 683 (further citations and quotations omitted).

[22] The parties do not differentiate between Counts II and III in their briefing, so the Court will not do so here.

[23] 436 U.S. 658 (1978).

[24] *Id.* at 691.

causation, and (3) deliberate indifference."[25]  "A challenged practice may be deemed an official policy or custom for § 1983 municipal-liability purposes if it is a formally promulgated policy, a well-settled custom or practice, a final decision by a municipal policymaker, or deliberately indifferent training or supervision."[26]

"To establish the causation element, the challenged policy or practice must be closely related to the violation of the plaintiff's federally protected right."[27]  The plaintiff must show "the municipality was the 'moving force' behind the injury alleged."[28]  As stated by the Tenth Circuit:

> Where a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee.  The causation element is applied with especial rigor when the municipal policy or practice is itself not unconstitutional, for example, when the municipal liability claim is based upon inadequate training, supervision, and deficiencies in hiring.[29]

Finally, the plaintiff must show that "the policy was enacted or maintained with deliberate indifference to an almost inevitable constitutional injury."[30]  This "is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action."[31]  As explained by the Tenth Circuit:

> The deliberate indifference standard may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm.  In most instances, notice can be established by proving the existence of a pattern of tortious conduct.  In a narrow range of circumstances,

---

[25] *Crowson v. Wash. Cnty., Utah*, 983 F.3d 1166, 1184 (10th Cir. 2020) (quoting *Quintana v. Santa Fe Cnty. Bd. of Comm'rs*, 973 F.3d 1022, 1034 (10th Cir. 2020)).

[26] *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 770 (10th Cir. 2013).

[27] *Id.* (further citation and quotations omitted).

[28] *Id.*

[29] *Id.* (further citation and quotations omitted).

[30] *Id.* at 769.

[31] *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 410 (1997).

however, deliberate indifference may be found absent a pattern of unconstitutional behavior if a violation of federal rights is a highly predictable or plainly obvious consequence of a municipality's action or inaction.[32]

Putting aside the obvious difficulty of showing that the City's action or inaction was the "moving force" behind Allen's assault, Plaintiff's Fourth Amendment claims must fail because she cannot show deliberate indifference on the part of the City. Here, the timeline becomes vitally important to whether the City was deliberately indifferent. At the time of Plaintiff's assault, Plaintiff alleges that only one other individual had reported to the City a sexual assault under similar circumstances to Plaintiff's. However, Plaintiff does not allege that the victim of that prior assault knew her assailant was in fact a police officer or that she informed the City of that belief. If Plaintiff's assailant was a private party—as Plaintiff herself believed when she reported her own assault to the City—the Fourth Amendment would not be implicated.

Although the Fourth Amendment guarantees freedom from "unreasonable searches and seizures,"[33] it "does not apply to a search or seizure, even an arbitrary one, effected by a private party on his own initiative."[34] Without knowledge that the rapist reported before Plaintiff's assault was a police officer—not just a private party pretending to be one—the City could not have been aware that failing to train, discipline, supervise, or investigate its officers ran the risk of violating others' *federal* rights in the future. And without notice of that risk, the City could not have been deliberately indifferent to Plaintiff's Fourth Amendment rights. Because Plaintiff cannot show that the City was deliberately indifferent, Counts II and III must fail as a matter of law.

---

[32] *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998) (further citation and quotations omitted).

[33] U.S. Const. amend. IV.

[34] *United States v. Ackerman*, 831 F.3d 1292, 1300 (10th Cir. 2016) (quoting *Skinner v. Ry. Labor Execs.' Ass'n*, 489 U.S. 602, 614 (1989)).

To the extent Plaintiff bases her Fourth Amendment claim on the City's failure to investigate her reported assault, she cannot show that any of the City's actions *after* she was assaulted caused the assault.  After all, "basic principals of linear time prevent [courts] from seeing how conduct that occurs after the alleged violation could have somehow caused that violation."[35]

Of course, "[a] failure to investigate or reprimand might also cause a future violation by sending a message to officers that such behavior is tolerated."[36]  To that end, Plaintiff alleges that Movants failed to investigate one prior sexual assault by Allen.  But—as already discussed—there are no allegations that at the time of Plaintiff's assault the City knew or had reason to know the perpetrator of that sexual assault was an HPD officer.  Thus, the City could not have been deliberately indifferent to any violation of Plaintiff's federal rights.  Accordingly, the Court grants Movants' Motion to Dismiss as to Plaintiff's Fourth Amendment claims.[37]

## C.    Negligence

Only two claims remain: (1) Plaintiff's negligence claim against Heitschmidt (Count VII) and (2) Plaintiff's negligent failure to train and supervise claim against the City (Count VIII).  The Complaint fails to specify whether Plaintiff asserts the negligence claim against Heitschmidt in his official or individual capacity.  But the parties address both negligence claims together, indicating

---

[35] *Cordova v. Aragon*, 569 F.3d 1183, 1194 (10th Cir. 2009).

[36] *Id.*

[37] By failing to substantively argue for her failure to supervise and failure to discipline claims in her Response, Plaintiff indicates her intent to abandon them.  The Court accepts this abandonment as an alternative basis for the Court to grant Movants' Motion to Dismiss as to those claims.  *See Tronsgard v. FBL Fin. Grp., Inc.*, 312 F. Supp. 3d 982, 1009 (D. Kan. 2018) ("[P]laintiffs don't respond substantively to defendants' argument that Kansas law bars plaintiffs' rescission claim.  The court thus assumes that plaintiffs have abandoned their request for rescission."); *see also Hinsdale v. City of Liberal*, 19 F. App'x 749, 768–69 (10th Cir. 2001) (affirming district court's determination that plaintiff abandoned his equal protection claim by failing to address it in his response to defendant's motion for summary judgment).

that Plaintiff intends to bring her negligence claim against Heitschmidt in his official capacity. Plaintiff also refers to Movants as "the City Defendants," further supporting this inference[38]

Movants argue that three exceptions to liability prevent Plaintiff from asserting any negligence claims against them as governmental entities: (1) the police protection exception; (2) the public duty doctrine; and (3) the discretionary function exception. Because the first two exceptions taken together are sufficient to dismiss Plaintiff's negligence claims, the Court need not address the discretionary exception.

The Kansas Tort Claims Act ("KTCA") governs the liability of governmental entities in Kansas.[39] As interpreted by the Kansas Supreme Court, the KTCA provides

> that a governmental entity can be found liable for the negligent or wrongful act or omission of any of its employees while acting within the scope of their employment only if (1) a private person could be liable under the same circumstances and (2) no statutory exception to liability applies.[40]

"The burden rests on the governmental entity to establish any KTCA exception."[41] Among the "numerous exceptions to [the] general rule of liability"[42] are 24 enumerated exceptions within K.S.A. § 75-6104.

---

[38] *See Thouvenell v. City of Pittsburg*, 2018 WL 3068199, at *3 (D. Kan. June 21, 2018) ("Because official capacity suits are treated as suits against the entity, Plaintiff's claims against the individuals in their official capacity are duplicative of the claims against the City alleging the same violations." (citing *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985); *Monell*, 436 U.S. at 691 n.55; *Moore v. Bd. of Cty. Comm'rs of Leavenworth*, 470 F. Supp. 2d 1237, 1255 (D. Kan. 2007))).

[39] *Schreiner v. Hodge*, 315 Kan. 25, 504 P.3d 410, 422 (2022) (citing K.S.A. § 75-6103(a)).

[40] *Keiswetter v. State*, 304 Kan. 362, 373 P.3d 803, 807 (2016) (further citations, quotations, and emphasis omitted); *see also* K.S.A. § 75-6103(a) ("Subject to the limitations of this act, each governmental entity shall be liable for damages caused by the negligent or wrongful act or omission of any of its employees while acting within the scope of their employment under circumstances where the governmental entity, if a private person, would be liable under the laws of this state.").

[41] *Henderson v. Montgomery Cnty. Bd. of Comm'rs*, 57 Kan. App. 2d 818, 461 P.3d 64, 70 (2020).

[42] *Schreiner*, 504 P.3d at 423 (further citation and quotations omitted).

Known as the police protection exception, K.S.A. § 75-6104(a)(14) exempts governmental entities from liability stemming from "failure to provide, or the method of providing, police or fire protection."  As interpreted by the Kansas Court of Appeals, "This provision clearly shields systemic or policy decisions a governmental entity may make, such as where to build a fire station or how to assign patrol officers across a municipality."[43]

Kansas courts have noted that the police protection exception "codifies the common-law public duty doctrine."[44]  "Under that doctrine, governmental entities could not be liable for breach of duties owed the general public as opposed to particular individuals."[45]  "Absent some special relationship with or specific duty owed an individual, liability will not lie for damages."[46] Explaining both the police protection exception as well as the public duty doctrine, the Kansas Court of Appeals stated:

> Because municipalities provide police protection to the public at large, they could not be sued for the negligent delivery of that service in a particular instance.  For example, a city could not be successfully sued because police officers were inexcusably slow in responding to a call of a home invasion in progress and, as a result, the victim suffered prolonged abuse and serious injuries at the hands of the criminals.[47]

On multiple occasions, this Court has held that "[a] governmental entity provides police protection when it trains and supervises law enforcement."[48]

---

[43] *Est. of Randolph v. City of Wichita*, 57 Kan. App. 2d 686, 459 P.3d 802, 820 (2020).

[44] *Henderson*, 461 P.3d at 70; *see also Est. of Belden v. Brown Cnty.*, 46 Kan. App. 2d 247, 261 P.3d 943, 972 (2011).

[45] *Est. of Belden*, 261 P.3d at 972.

[46] *Id.* (further citation and quotations omitted).

[47] *Id.* (citations omitted).

[48] *See Currie v. City of El Dorado*, 2008 WL 11380070, at *3–4 (D. Kan. Aug. 20, 2008); *Allen v. Bd. of Comm'rs of Cnty. of Wyandotte*, 773 F. Supp. 1442, 1456 (D. Kan. 1991); *Crawford v. City of Kan. City*, 1997 WL 331804, at *11 (D. Kan. May 23, 1997); *Sigg v. Bd. of Cnty. Comm'rs*, 1999 WL 588186, at *8 (D. Kan. July 30, 1999); *see also Unruh v. City of Wichita*, 512 P.3d 232 (Kan. Ct. App. 2022), *aff'd*, 318 Kan. 12, 540 P.3d 1002 (2024)

Movants sufficiently show that the police protection exception—and therefore the public duty doctrine—applies to the facts of this case. Count VII explicitly states a claim for "negligent failure to train and supervise," while Count VII's allegations focus on Heitschmidt's failure to "[i]mplement and enforce procedures, training, and policies" for investigations. As this Court has determined several times before, training and supervision are quintessential examples of when the police protection exception applies. It follows that systematic policy decisions on how to investigate crimes falls under this exception as well. Any duty connected with these matters is necessarily owed to the general public—not Plaintiff herself. Therefore, Plaintiff's negligence claims must fail under the KTCA.

Count VII, however, also alleges that Heitschmidt was negligent for failing to "*[p]ublicly warn* the citizens when he became aware that a serial rapist was attacking women in the jurisdiction utilizing the power and authority of a law enforcement officer."[49] The very wording of this allegation shows that Plaintiff complains that Heitschmidt failed in a duty owed to the public— not a special duty owed to herself.

Nevertheless, Plaintiff argues that the Kansas Supreme Court has previously recognized that "a common law duty to issue a timely warning when extremely dangerous people escape from custody" does not fall within the police protection exception.[50] But to the best of the Court's research, no court has expanded this "duty to warn" beyond the context of dangerous escapees. In fact, the Kansas Supreme Court later rejected a negligent "failure to warn" claim against

---

(upholding district court's grant of summary judgment on negligent training and supervision claims based on police protection and discretionary exceptions).

[49] Emphasis added.

[50] *Cansler v. State*, 234 Kan. 554, 675 P.2d 57, 70 (1984).

government entities when they "did not take charge of [a dangerous individual] and did not have custody or control over him."[51]

Here, Plaintiff's "failure to warn" claim is based on the HPD's knowledge of the previous sexual assault that occurred under similar circumstances.  She does not allege that Allen was ever in HPD custody or under its control prior to her own assault in 2013.  Therefore, Plaintiff fails to show that Movants owed her some special duty beyond a police department's general duty to the public.  As such, the police protection exception also applies to Plaintiff's failure to warn claim. Accordingly, the Court grants Movants' Motion to Dismiss as to Counts VII and VIII.

**D.      Plaintiff's request for amendment**

In the last sentence of her Response, Plaintiff asks the Court to deny Movants' Motion to Dismiss "or, in the alternative, leave to amend her Complaint."  The Tenth Circuit has stated on numerous occasions that a "bare request in response to a motion to dismiss that leave be given to amend the complaint is insufficient."[52]  It has soundly rejected granting leave to amend where a plaintiff "simply made perfunctory, conditional requests in his responses to the motions to dismiss that he be allowed to amend if the court found his allegations deficient."[53]  Moreover, under this Court's local rules, a party filing a motion to amend must:

(1) set forth a concise statement of the amendment or leave sought;
(2) attach the proposed pleading or other document;
(3) in the case of a proposed amended pleading, a non-pro se filer must also attach a redlined version of the proposed amendment that shows all proposed changes to the pleading; and
(4) comply with the other requirements of D. Kan. Rule 7.1.[54]

---

[51] *Beck v. Kan. Adult Auth.*, 241 Kan. 13, 735 P.2d 222, 230 (1987).

[52] *Sullivan v. Univ. of Kan. Hosp. Auth.*, 844 F. App'x 43, 52 (10th Cir. 2021) (cleaned up) (further citations and quotations omitted).

[53] *Id.*

[54] D. Kan. R. 15.1(a).

Plaintiff fails to comply with this Court's rules governing amendment of the pleadings. She presents solely a perfunctory, conditional request, which is wholly insufficient under Tenth Circuit precedent. She likewise fails to attach the proposed pleading, much less a redlined version showing the proposed changes. Therefore, the Court denies Plaintiff's requested leave to amend.

**E.      Motion to Stay**

Given that the Court has dismissed all claims against Movants, their pending Motion to Stay is denied as moot. Plaintiff's claims against Allen remain.

**IT IS THEREFORE ORDERED** that Movants' Motion to Dismiss (Doc. 9) is **GRANTED**. Defendants Heitschmidt and City of Hutchinson, Kansas are terminated from the case.

**IT IS FURTHER ORDERED** that Movants' Motion to Stay Discovery and Pretrial Proceedings (Doc. 18) is **DENIED** as moot.

**IT IS SO ORDERED.**

Dated this 28th day of August, 2024.

ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE